ARGUED AND DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF LOUISIANA.

EASTERN DISTRICT—JANUARY TERM, 1830.

*RAWLE, USE of RUSSELL vs. SKIPWITH & WIFE.*

APPEAL from the court of the third district, the judge of the eighth presiding.

MATHEWS, J. This is the third time that this cause has been brought before the supreme court. The appeal immediately preceding the present, was taken from a judgment by default, which was allowed in the court below, in consequence of the judge believing, that no answer had been regularly put in to the merits of the cause. The record shows, that the defendants separated in pleading and filed various exceptions to the petition. Previous to the last return of the cause to the district court, F. Skipwith had commenced proceeding against his creditors s pursuance of our insolvent laws, pro-

If an amendment to an answer, presents, under another form, a defence substantially embraced by the previous pleading, the court of the first instance need not receive it.

A continuance will not be granted on the ground of surprise, when that surprise did not arise from the acts of the adversary, but from the application of the known rules of law to the proceedings in the cause.

A judgment, regularly obtained in a case where the equity is doubtful, or preponderates in fa-

Eastern District.
*January*, 1830.

RAWLE
*vs.*
SKIPWITH & WF.

vour of the plaintiff, will not be set aside to let in a legal defence, which, if used in due time, might have defeated the action.

against him the present suit was stayed, the cause is therefore to be examined only in relation to Mrs. Skipwith.

The reversal of the judgment by default, was obtained on the ground, that one of the exceptions, pleaded by the wife, embraced the merits of the case, and was virtually an answer making a *contestatio litis*, which fully authorised and required the introduction of evidence, as in case of issue joined in relation to facts. The correctness of the decision in the supreme court, touching this point of the cause, we believe cannot be questioned, on any sound principles of reason or law: and objections to it, certainly come with a bad grace from the party who received its benefit.

Without entering on a discussion of the principles laid down in our Code of Practice, relative to exceptions, whether declinatory, dilatory, or peremptory, and the whole doctrine of pleading, as therein taught, (in which the counsel for the appellant imagines he sees great confusion and want of perspicuity, and which may possibly exist,) if the third exception made by Mrs. Skipwith be opposed to the , in gations of the petition, by which she is I as t to be made liable for the debt now

claimed from her, it will clearly appear that a contest as to facts necessarily arose. The notarial act executed by her conjointly with her husband in favour of the plaintiff, which is made a part of his petition, states especially that she binds herself *in solido* with her co-obligor, and that the debt, which they oblige themselves to pay, had been converted to the benefit of the wife. The exception amounts to a denial of these facts, by alleging others, with which they are wholly inconsistent; they cannot both be true. 1. That the debt was contracted by her husband and for his benefit. 2. That in truth she bound herself as surety, which according to law could not be validly done. The cause was tried in the court below, without the introduction of any evidence in support of the defence contained in the exception above stated, and judgment was rendered subjecting property which had been mortgaged to the defendants, and the mortgage by them transferred to the plaintiff, to be sold to satisfy his claim ; from which Mrs. Skipwith appealed.

I find in the record four bills of exceptions taken to the opinions of the judge *a quo* pronounced on matters which occurred in the

course of the trial of the cause. The first was on a motion made by the defendant's counsel to have the cause dismissed on the grounds stated in the third exception contained in the original answer of the appellant. In my opinion, the judge did not err in refusing to dismiss the petition on those grounds. He was correct in considering that exception as embracing a plea to the merits; it formed according to the arguments above stated, *a contestatio litis,* on the decision of which principally depended the defendant's liability or exoneration from the debt claimed. The second bill was produced by the refusal of the judge to permit a peremptory exception to be filed, when the cause was called up for trial. Notwithstanding the counsel chose to denominate it as one arising from law, I am of opinion with the ditsrict judge, that it rather relates to form, and was offered too late. See C. P. p. 122, art. 343, 344 and 345. The third has relation to an answer which the defendant offered to file. Part of it was received, and part rejected, as " changing the issue between the parties, and might operate a continuance, on the ground of surprise." The part rejected was an allegation that the

appellant was separated in property from her husband by a marriage contract made in France, consequently not bound for his debts; and that the land and negroes, which, by a contract, shows to have been sold to Josias Gray (as stated in the petition) by her and her husband jointly, and on which the mort-gage was stipulated in their favor by the vendor, and afterwards in part transferred to the plaintiff, was her separate property, &c.

Taking, as I have done throughout, in this cause, the exceptions first filed on the part of Mrs. Skipwith, as embracing a plea to the merits, and holding the place of an answer, the pleading offered to be filed in the last instance before the district court, must be viewed in the light of an amendment, or amended answer. According to the code of practice, amendments may be made to both petitions and answers, after issue joined, if permission be obtained from the court; the granting of such permission is restrained absolutely, only in cases where the amendments would change the substance of the demand, or that of the defence. C. P. arts. 419, 420. The effects of amendments allowable, is regulated by art. 421.

When leave to amend is asked, the first inquiry to be made by the court from which it may be requested, is whether the amendment proposed will have the effect of substantially altering the claim, as set forth in the original petition, or the defence contained in the answer, according as the application may be made by either plaintiff or defendant; for if this effect would necessarily be produced, the law positively prohibits these amendments, leaving no discretion to the courts.

The amendment to the answer proposed in the present case, seems to have been rejected by the judge *a quo*, under a belief that it changed the issue between the parties, and might operate a continuance of the cause, (which was then on trial) on the ground of surprise. It is not readily perceived in what manner this amendment could change the issue already made by some of the allegations of the petition, and the third exception filed by the defendant. The payment of the debt is claimed from her, as being bound *in solido* with her husband, and as having been contracted for her benefit. She denies the truth of these facts, by alleging that although the contract was made in the form of an obligation *in solido*, and in the preamble contains

Eastern District,
*January*, 1830.

RAWLE
*vs.*
SKIPWITH&WF.

an acknowledgement that the debt secured by it had been beneficial to her, yet in truth she only became surety to her husband for the payment of a debt entirely his own, and from which she derived no benefit. In consequence of his insolvent situation (as above stated) proceedings in the suit on the last trial were carried on against her alone; and it is her property only that could be made liable to seizure under the judgment, either as an interest in the community of goods, (if any exist) between her and her husband, or such as she holds separately. Consequently, any additional allegation in the answer, that she is separated in property from her husband, could not materially change the issue between the parties; or in the language of the C. of P., alter the substance of her defence. It was therefore within the discretion of the court below, to have permitted or rejected the amendment proposed.

Whether this discretion was properly exercised by that tribunal, is believed to be a legal subject of inquiry by this court. As the additional plea offered was not (in my opinion) very material to the issue already joined, and could not in any degree affect the interest of the defendant in the present action; and

as it was proposed when the cause was on trial, and might have produced unnecessary delay, I think that the district court did not err in refusing it.

The investigation of the last bill of exception, that which was taken to the opinion of the judge, in refusing a continuance of the cause, on the affidavits of the defendant and her counsel, necessarily leads to an examination of the merits.

The judgment rendered by the district court in relation to facts, is based entirely on the notarial act executed by the defendant and F. Skipwith her husband, in favor of the plaintiff and her acknowledgments and renunciations therein contained. She renounced the benefit of the laws which would have released her from the obligation of a contract *in solido*, without proof that it turned to her advantage, and acknowledged that the debt, for which she then bound herself, had been converted to her own benefit. If the contract contained nothing, in any manner repugnant to these declarations, the act would be conclusive as to all facts necessary to create a legal obligation on the part of the wife. She bound herself *in solido* with her husband, and the debt was created for her own

benefit. But in the answer or third exception of the pleadings, it is stated that she was merely surety for a debt of her husband, from which she never derived any advantage. That these allegations are true, notwithstanding the acknowledgement of the defendant to the existence of facts directly contrary, in the first part of the notarial act, a strong presumption is raised, by a statement made in the last clause of the instrument, which shows that the obligation was entered into to secure the payment of six notes which had been executed by F. Skipwith alone to the plaintiff in 1818, amounting altogether to the sum now claimed from the defendant. A wife who has made up her mind to become surety for her husband, will readily accede to all the forms of law required to give validity to her obligation, although there may not be a single word of truth in any of her acknowledgments. The law is settled and clear, that at the time this contract was made, a wife could in no case bind herself as security for her husband: See v. 4, 230, where all the cases previously decided in relation to the present subject are collated.

The evidence of the cause, as exhibited on the record, does perhaps preponderate in fa-

vor of the plaintiff's claim: but as doubts may fairly be entertained of its legality under the existing circumstances of the case, I am of opinion that it might have been in aid of justice to have continued the cause on the showing of the defendant in the court below. It cannot be considered as having arisen from very gross neglect, that the defendant was not prepared with all her testimony on the last trial; when we take into view the manner in which the suit has been banded about from one court to the other, on the petition, and what the counsel for the appellant considered as exceptions, which in his opinion ought to have been disposed of, before an answer to the merits could regularly be required. If in this he was in error, the effects of it should not be too rigorously visited on his client. I have been always opposed to a course in judicial proceedings which may have a tendency to affect the legal rights of suitors, by too strict an adherence to forms of practice.

It must be ever painful to a judge to witness a probability of injustice to a client, by the mistakes of his counsel; and when a remedy can be applied by a little delay, without doing great violence to general rules of

procedure in seats, it ought to be granted.
In the present case it may be presumed that
the defence was conducted principally by
suggestions from the husband, and that it did
not seriously occupy the attention of his wife,
until since his failure. This circumstance,
in addition to the inaptitude of women to
manage affairs, relative to property, and par-
ticularly such as concern law suits, ought to
excuse the appellant for neglect in commu-
nicating to her counsel her means of de-
fence, at a more early period.

PORTER, J. I fully concur in the opinion
which the presiding judge of the court has
prepared in this case, except that part of it
which considers the decision of the inferior
court erroneous, in not continuing the
cause.

I do not think there was any *legal* ground
presented for delaying the trial, and I do
not believe the *justice* of the case requires
our interference.

The cause was commenced on the 22d
May of 1827, and the trial was had in June,
1829. It appears to have been delayed
during this time, by the various proceedings

Eastern District.
*January*, 1830.

RAWLE
*vs.*
SKIPWITH & WF.

had on the matters set up in defence by the pleadings of the defendants.

When filed, they were stated to be exceptions to the plaintiff's petition, and on examination, they were found to contain not only exceptions, but an answer on the merits. The district court sustained the exceptions, and the plaintiff was compelled to appeal. In this tribunal, the decision was reversed, and the cause remanded. On its return to the district court, no further answer was put in. The plaintiff, misled, I presume, by the defendant's having stated his defence to consist of exceptions, took a judgment by default, and the court made it final. From this judgment, the defendant, in turn, appealed, and it was reversed—this court expressly declaring, that the original answer contained not only exceptions, but a defence on the merits.

After the defendant was thus relieved from the effects of a final judgment, and relieved, too, on the express ground that she had pleaded to the merits; as soon as the cause was called for trial in the court below, she moved for a continuance, on the ground, that she had never conceived her

cause at issue; and her counsel made an affidavit that he had also been of that opinion.

In addition to this affidavit, we have that of the defendant, who swears, that she had been informed by her husband, and verily believes it to be true, that he had been sued for the debt due Russell, in 1809, in Philadelphia, and that a copy of the record of said suit would show, that the said debt was originally due by her husband; that, deponent not being aware of the importance of said information, never communicated the same to her counsel, until it was too late to procure the said record for the present term of the court.

If, on such facts, a party can claim a continuance, and the cause is to be remanded from this tribunal, to be tried again, because it was refused, I do not see well in what kind of a case it can hereafter be denied, where ignorance or surprise is laid as the ground. The well established rule is, that new trials should never be granted, for the discovery or want of evidence, which the party might, by due diligence, have procured; or for surprise, which was not cau-

Eastern District.
*January*, 1830.

RAWLE
*vs.*
SKIPWITH & WF.

sed by some art of the adversary, but from the application of the known rules of proceeding, to the cause. This rule, like all the others on this subject, is, for obvious reasons, one of great utility, and should never be deviated from, unless in cases which plainly show, that the want of diligence, or surprise, was attributable to causes which satisfactorily take the case out of the reasons on which the rule is founded. In this instance, nothing of that kind has been shown. The defendant's want of diligence is excused by no one circumstance, but an allegation that she did not know the information was of any importance, and, therefore, did not communicate it to her counsel. Two years before, she apprized those intrusted with her defence, that she was only surety for her husband, and pleaded expressly in her answer, that she was not responsible for his debts.

The surprise alleged on the ground, that the defendant was not aware there was a plea to the merits, although she had pleaded the engagement never had any legal force against her, being signed as surety, does not require a particular examination.

It is most clear, it was a defence on the merits, and it is equally clear, the defendant can claim no advantage from such a mistake.

The law presumes a certain degree of legal knowledge in all parties litigant in courts: or supposes the means of obtaining it through a certain class of persons, whose lives are devoted to the acquisition of that knowledge, and whose profession and duty it is, to afford their aid to all who may honestly demand it. Without this presumption, and the rules predicated on its existence, no cause could be terminated. Parties would come before us again and again, with pleas of ignorance, inattention, misapprehension and mistakes. In some instances, they would be well founded. In others, they would be used by the crafty and unprincipled, as an engine of delay, and as a means of trying a cause a second or third time, or oftener, if the decision was unfavorable.

If the rule, to an observance of which I attach so much importance, should be ever deviated from, it ought only to be in cases where there is a strong probability injustice has been done. Not merely injustice,

Eastern District.
January, 1830.

RAWLE
*vs.*
SKIPWITH & WF.

by depriving a party of *a strictly legal defence*, but one in which *equity* too enters for its share.    That this view is correct, I think is manifest, from the reflection, that no defence *which was purely legal*, could give a stronger right to the defendant to have the judgment set aside, than her inattention to, or violation of, the rules of proceeding conferrred on the plaintiff to have that judgment maintained.    In the instance before us, that equity has not been shown to my satisfaction.    It was strongly pressed in argument, that the obligation by which the wife acknowledged the debt had turned to her benefit, proved the contrary, because it showed that debt to have been originally contracted by the husband.    But the debt may have been so contracted, and yet the wife have derived great benefit from it.    The contract of marriage comes up with the record, and is placed before us.    By it, we see that neither party had any property at the time of its celebration, except their wearing apparel.    It is not shown the wife carried on a separate commerce, nor that she has received property by succession, or otherwise. The husband is now insolvent.    The wife

owns either a plantation and slaves, sold to Gray for $45,000, or the debt due for them. How this property was acquired, the evidence affords no information, except the declaration in the contract with the plaintiff, by which the wife acknowledges the debt due to him had turned to her benefit. If this declaration be true, the presumption is, that the money, or the value received from Russell, was applied to the acquisition of property for her. It is possible this view may be erroneous; but when a party seeks to set aside a judgment which has been regularly obtained on a clear legal right, she ought to show more than that she would have had a legal defence. Equity, on a consideration of the whole case, should also appear to be in her favor.

I conclude that, as the law is clearly with the plaintiff, and the equity, to say the least of it, doubtful, that the judgment of the inferior court should be confirmed, except in relation to the interest. The obligation which the wife contracted for her husband, was novated by the acceptance of an assignment of a debt due by Gray; and the judgment of the inferior court inforces this assignment on the property mortgaged by Gray,

which has since come into the hands of the husband of the appellant. It also gives interest on the sum due to Russell at the time of the acceptance of Gray's debt, in lieu of the notes then held by the former. I can discover nothing in the transfer of the debt which authorises this. It is for the sum of $11,500, to be paid at certain periods, and is silent in respect to any interest.

I, therefore, think the judgment of the district court should be reversed, so far as it gives interest, and that it be confirmed for the principal.

MARTIN, J. I concur with the opinion of the presiding judge in every part of it, except that which relates to the remanding of the cause, on the ground, that the district court erred in denying a continuance to the defendants. In this part of the case, I concur with the junior judge of this court, for the reasons he has given.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the assignment by the defendant, L. V. Skipwith, to plaintiff, of a portion of the

Eastern District.
*January*, 1830.

R A W L E
*vs.*
S K I P W I T H & W F

mortgage of Josias Gray to herself and hus-band, on the 8th day of September, 1821, be considered good and valid to the amount of $11,500; and it is further ordered and decreed, that the plaintiff be at liberty to exercise against the lands and slaves mentioned in said act of mortgage from Josias Gray to defendant, all rights of action which she, the said Louisa V. Skipwith, could or might of right exercise, had the assignment mentioned in this decree of that part of said mortgage never have been made; the defendant paying costs in the court of the first instance; the plaintiff that of appeals.

*Morgan* for plaintiff, *Watts* for defendant.